# IN THE SUPREME COURT, STATE OF WYOMING

# 2019 WY 128

OCTOBER TERM, A.D. 2019

December 18, 2019

J. BRANDON WORKMAN,

**Appellant**
**(Defendant),**

**v.**

S-19-0057

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Weston County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
    David McCarthy of David McCarthy, P.C., Rawlins, Wyoming.

*Representing Appellee:*
    Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Emily M. Croucher, Student Intern. Argument by Ms. Croucher.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN**, Justice.

[¶1]    Appellant, J. Brandon Workman, entered a conditional guilty plea to possession of a controlled substance, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii), reserving his right to appeal the district court's denial of his motion to suppress evidence.  Finding no error, we affirm the denial of the motion to suppress and, thus, Mr. Workman's conviction and sentence.

## *ISSUES*

[¶2]    We combine and rephrase the parties' issues into the following dispositive questions:

> 1. Whether Mr. Workman preserved his argument that Deputy Christopher Case deliberately included misstatements in his affidavit, and, if so, whether those misstatements were necessary to establish probable cause to search Mr. Workman's camper.
>
> 2. Whether deputies obtained evidence necessary to establish probable cause to search the camper in violation of Mr. Workman's rights under the Fourth Amendment of the United States Constitution.

## *FACTS*

[¶3]    On September 8, 2017, Weston County Fire Warden Daniel Tysdal reported to a fire which had broken out on private property near Breakneck Road.[1]  At approximately 6:20 p.m., Warden Tysdal contacted the Weston County Sherriff's Office and requested it dispatch a deputy to "discuss possible causes of the fire[] and possible violations" of state law.  The Sherriff's Office dispatched Deputy Case.

[¶4]    On reaching the scene, Deputy Case noticed the fire "was in the process of being put out."  He also noticed "a camper next to the fire, maybe within 20 feet at best, and various items outside the camper that may or may not be flammable."  Deputy Case then spoke to Warden Tysdal, who informed him that "unknown means" started the fire, that the fire had spread to seven and one-half acres, and that neighbors and passersby indicated that Mr. Workman owned the property.  After speaking with Warden Tysdal, Deputy Case attempted to "check" inside the camper due to its "proximity . . . [to] where the fire started," to make sure no one was inside, and also to determine any possible reasons the fire started.

---

[1] The facts recited in this section were developed in the hearing on Mr. Workman's motion to suppress.

1

[¶5]    The means Deputy Case used to "check" inside the camper are critical to this case. After noticing that a padlock secured the camper's sole door, Deputy Case noticed a window, with a gap in its curtains, next to the front door (i.e., "the first window").[2] Deputy Case looked through that window and saw drug paraphernalia and other items which led him to question whether the camper housed a "meth lab."  Deputy Case notified Deputy Dan Fields who then notified Deputy Jason Jenkins.  After Deputies Fields and Jenkins arrived, Deputy Case educated them on his findings.  Then, at some point, one of the Deputies opened the plastic covering the large front window (i.e., "the second window") to take pictures to send to the Wyoming Division of Criminal Investigation (DCI) to confirm whether the camper was a "meth lab."  DCI disabused the Deputies' concern that the camper housed a "meth lab," but suggested that the objects in the picture required further investigation.

[¶6]    Deputy Case returned to the Sheriff's Office to prepare an affidavit and obtain a warrant to search the camper.  At approximately 3:30 a.m. the following morning, September 9, a magistrate granted the warrant and Deputy Case returned to the scene to transport the camper to the Sheriff's impound lot.  Deputy Case returned to execute the warrant around 2:00 p.m. that day.  The padlock on the camper's front door was cut, and Deputies found 13.85 ounces of marijuana and a bag containing 0.79 grams of methamphetamine inside.

[¶7]    The State charged Mr. Workman with possession with intent to deliver a controlled substance, and later amended the information to add a charge for possession of a controlled substance.  Mr. Workman filed a motion to suppress, challenging "the reasonableness of a search on September 8, 2017, and the probable cause for Search Warrants issued on September 9, 2017 and September 12, 2017."[3]  Mr. Workman's counsel premised his argument on a misunderstanding of the timeline of Deputy Case's actions on the night of the fire.  In short, he believed that Deputy Case searched the camper by cutting the padlock and entering the camper before he had obtained the search warrant; and, most notably, that Deputy Case subsequently based his affidavit on what he saw in plain view during that search.  From there, counsel argued that because "the original warrantless search was used to justify the probable cause contained in the Affidavit in support of the warrant, all items seized must be suppressed[.]"

[¶8]    At the suppression hearing in July 2018, Mr. Workman abandoned several of his arguments after learning that Deputy Case did not cut the padlock before he obtained the search warrant, and focused on Deputy Case's look through the second window of Mr. Workman's camper.  When asked which windows he remembered being open on his

[2] The record is unclear as to whether Deputy Case noticed the padlock on the door before or after he looked in the first window.  However, when Deputy Case noticed the padlock is not outcome determinative.
[3] Newcastle Police Department Detective Brandon Vaughn subsequently obtained a warrant to search Mr. Workman's home based on the drug evidence Deputy Case found in the camper.  Detective Vaughn's search warrant is not directly relevant to this appeal.

arrival, Deputy Case testified that he remembered "the window directly to the right of the front door and the big window on the front of the camper, it had one of those plastic things that was raised up[.]" Mr. Workman's counsel then showed Deputy Case photos that were taken before he "check[ed]" inside the camper, which showed the plastic covering was closed. Deputy Case responded, "[t]hat's my mistake," and acknowledged that "one of [the deputies] would have had to have opened" the plastic covering.

[¶9]    When asked whether Deputy Case "used the information that [he] obtained in lifting up that cover and taking those pictures when [he] sought out this warrant," he answered, "[n]ot only that, but yes[.]" On redirect, however, Deputy Case clarified what evidence he used to obtain the search warrant. Deputy Case confirmed that his affidavit did not include any pictures from either window. He also identified exactly what he saw through the first window:

> Looking through the window with the open curtains next to the door, that's what sparked my attention to where it might possibly be a meth lab. What I saw from the window across on the, I guess the kitchen counter, where the sink is, was Gatorade bottles, something to that effect, with brown liquids in it, and it looked like maybe wax or something spilling out the top of it as well as on the table.
>
> Directly in front of the window, where the table or the seating area would have been, there was a white substance, the white powdery substance in a bag, a mirror, a folding knife, and some green leafy substance that was inside of a lid of some sort.

When asked whether anything he saw through the second window was necessary to obtain the search warrant, Deputy Case responded that his look through the second window revealed "[n]othing new[.]"

[¶10]  In closing, Mr. Workman's counsel "question[ed]" whether the affidavit could have included the "specificity of items" listed if Deputy Case had not looked through the second window. Because the first window did not reveal items sufficient to support probable cause, he argued, Deputy Case unconstitutionally searched Mr. Workman's camper when he removed the plastic covering from the second window to look inside the camper without probable cause or exigent circumstances. Therefore, his argument continued, any items that Deputy Case saw through the second window must be stricken from the affidavit, thus negating any probable cause, and requiring the court to suppress all evidence which stemmed from the search warrant's execution.

3

[¶11]   The district court denied Mr. Workman's motion, and found that:

> [T]he deputy's actions up to obtaining the warrant were reasonable: Again, the location of the fire, the proximity of the fire to the [camper], the external observations that are made that give rise to the deputy's concern that there's a meth lab, which even if wrong are sufficient and leading us then to ultimately the search.[4]

After the court denied his motion to suppress, Mr. Workman entered a conditional guilty plea to possession of a controlled substance, permitting him to appeal the "Court's July 9, 2018 hearing on *Defendant's Motion to Suppress Evidence*[.]"  The district court sentenced Mr. Workman to three to five years' incarceration, with credit for time served, and suspended the sentence subject to five years' supervised probation.  Mr. Workman timely appealed.

## *STANDARD OF REVIEW*

[¶12]   When we review denial of a motion to suppress evidence, we "view the evidence in the light most favorable to the district court's determination and defer to the district court's factual findings unless they are clearly erroneous." *Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016) (quoting *Owens v. State*, 2012 WY 14, ¶ 8, 269 P.3d 1093, 1095 (Wyo. 2012)).  We view the evidence in this light "because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions.'" *Brown v. State*, 2019 WY 42, ¶ 10, 439 P.3d 726, 730 (Wyo. 2019) (quoting *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (citation omitted)).  "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Id.* (quoting *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009)).  "The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo." *Rodriguez v. State*, 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citation omitted).

---

[4] In its order denying the motion to suppress, the district court concluded that Deputy Case's "actions in looking through the window, were reasonable."  Although the court referred to a single window there, it recognized in its order and at the suppression hearing that Deputy Case looked through two separate windows.  Consistent with denial of the motion to suppress, we read the court's order to conclude that Deputy Case's "actions in looking through" both windows were reasonable under the circumstances.

## DISCUSSION

### *Deputy Case did not obtain the drug evidence in violation of Mr. Workman's constitutional rights under the Fourth Amendment to the United States Constitution.*

[¶13] Mr. Workman's overarching argument on appeal is that Deputy Case unconstitutionally searched his camper, and that everything stemming from that search should be suppressed. He has two sub-arguments: first, that Deputy Case made several deliberate misrepresentations in his affidavit, invalidating the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (the *Franks* argument); and second, that Deputy Case unconstitutionally searched Mr. Workman's camper when he opened the plastic covering on the second window to look inside the camper. Because this appeal arises from a conditional guilty plea, however, Mr. Workman may only argue that which he preserved in his plea. *See Brown*, ¶ 12, 439 P.3d at 730–31. We conclude that Mr. Workman did not preserve his *Franks* argument in his conditional guilty plea. We further conclude that even assuming Deputy Case unconstitutionally searched the camper when he opened the plastic covering to look through the second window, the warrant affidavit established probable cause through evidence attributable to Deputy Case's look through the first window—a look Mr. Workman does not challenge.

### A. *Mr. Workman's conditional guilty plea did not preserve his Franks argument.*

[¶14] Mr. Workman's conditional guilty plea defines the contours of what he may argue on appeal. *See id.* "[A] guilty plea waives appellate review of all non-jurisdictional claims, including claims of unlawfully obtained evidence." *Id.* (citation omitted). Wyoming Rule of Criminal Procedure 11(a)(2) is the sole exception to this rule, permitting "a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion." *Id.* (quoting *Kunselman*, ¶ 11, 188 P.3d at 569). Although conditional guilty pleas provide a mechanism for appellate review, they do not "provide carte blanche permission to present any and all arguments on appeal." *Id.* (citation omitted).

[¶15] We review only "those issues clearly brought to the district court's attention." *Id.* ¶ 12, 439 P.3d at 730–31 (citation omitted). "In determining the scope of an issue brought to the district court's attention, we will read any ambiguity in the conditional plea agreement 'against the Government and in favor of a defendant's appellate rights.'" *Id.* ¶ 13, 439 P.3d at 731 (quoting *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004) (other citation omitted)). "[T]he text of the plea agreement is our guide." *Anderson*, 374 F.3d at 957 (alteration in original).

[¶16] In his plea agreement, Mr. Workman reserved the right to appeal the "Court's July 9, 2018 hearing on *Defendant's Motion to Suppress Evidence*." His suppression motion broadly challenged Deputy Case's "search," which he alleged occurred when the Deputy

cut the padlock and entered the camper before obtaining a search warrant. At the motion to suppress hearing, Mr. Workman's counsel argued that Deputy Case's look through the second window constituted an unconstitutional search. After the suppression hearing concluded, the district court determined that it "appears to me at that point, at that time" when Deputy Case "looks in . . . to be reasonable." Nothing in the plea agreement, the suppression motion, or the district court's denial of the suppression motion clearly raised or identified Mr. Workman's *Franks* argument.

[¶17] To raise a *Franks* argument, a defendant must meet certain requirements. *See Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676; *see also Williams v. State*, 655 P.2d 273, 277 (Wyo. 1982) (recognizing the rule articulated in *Franks v. Delaware*). "[T]he appellant has to make a substantial preliminary showing of knowing or reckless misrepresentation, and the appellant has to show that the allegedly false statement was necessary to the finding of probable cause." *Williams*, 655 P.2d at 277. "Once the preliminary showing is made, the defendant is entitled to a hearing where the burden is on the defendant to prove his claims by a preponderance of the evidence." *Mathewson v. State*, 2019 WY 36, ¶ 38, 438 P.3d 189, 205 (Wyo. 2019).

[¶18] In *Mathewson*, we concluded that the defendant waived any *Franks* "false information" allegations because he failed to make a substantial preliminary showing. *See id.* ¶¶ 37–41, 438 P.3d at 205–06. Mr. Mathewson filed a pretrial memorandum stating he believed a *Franks* hearing would be necessary, but he abandoned that argument in his subsequent motion to suppress. *Id.* ¶ 39, 438 P.3d at 205. He did not file any subsequent motions entitling him to a *Franks* hearing. *Id.* On appeal, Mr. Mathewson "baldly assert[ed] the suppression hearing was 'effectively a suppression hearing and a [*Franks*] hearing wrapped up as one.'" *Id.* However, we concluded that Mr. Mathewson waived any such argument because he neither made the required preliminary showing, nor established good cause for failing to raise the argument in a W.R.Cr.P 12 motion. *Id*. ¶ 41, 438 P.3d at 206.

[¶19] Even viewed in the light most favorable to Mr. Workman, the motion to suppress and suppression hearing addressed only Deputy Case's potential mistakes in drafting the affidavit—a far cry from the "substantial preliminary showing of knowing or reckless misrepresentation" required under *Franks*. *Williams*, 655 P.2d at 277; *see also Mathewson*, ¶ 38, 438 P.3d at 205. While Mr. Workman cited *Franks* in his motion to suppress when he outlined the applicable law, he never clearly applied *Franks* to allege that Deputy Case deliberately included false information in his warrant affidavit. During the suppression hearing, he never articulated a concern that Deputy Case deliberately included false information in his affidavit or addressed whether inclusion of any such false information was necessary for a finding of probable cause.[5] Mr. Workman's counsel also did not file

---

[5] At most, Mr. Workman's counsel articulated a concern that Deputy Case used what he saw as a result of an unconstitutional look through the second window to support the search affidavit. That argument does

6

a motion requesting a *Franks* hearing after the suppression hearing. At oral argument, counsel suggested that the suppression hearing was also a *Franks* hearing. The record, however, does not support this assertion as he did not clearly raise his *Franks* argument before the district court; nor has he argued any good cause for failing to do so. *See Mathewson*, ¶ 41, 438 P.3d at 205–06; *see also* W.R.Cr.P. 12. We therefore conclude his conditional guilty plea did not preserve a *Franks* argument.

> **B.** **Even assuming Deputy Case unconstitutionally searched the camper when he opened the plastic covering to look through the second window, the warrant affidavit established probable cause through evidence attributable to Deputy Case's unchallenged look through the first window.**

[¶20] The only issue Mr. Workman properly preserved is whether Deputy Case unconstitutionally searched Mr. Workman's camper when he opened the plastic covering on the second window and looked inside. Deputy Case looked through two windows, however, and Mr. Workman never argued to the district court that Deputy Case unlawfully searched the camper when he looked through the first window. It is unnecessary for us to decide whether Deputy Case unconstitutionally searched the camper when he looked through the second window because, even assuming that he did, there was probable cause to search the camper based on what he independently saw through the first window. Consequently, we uphold the search warrant.

[¶21] If we accept Mr. Workman's argument, then the warrant affidavit included a mixture of constitutionally obtained evidence (from the first window) and unconstitutionally obtained evidence (from the second window). We have not addressed a situation where a warrant is tainted by some unconstitutionally obtained information, but the United States Supreme Court has. *See United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 3305, 82 L.Ed.2d 530, 544 (1984). In *Karo*, the Supreme Court stated that unconstitutionally obtained evidence in a warrant affidavit will "invalidate the warrant for the search . . . if it proved to be critical to establishing probable cause for the issuance of the warrant." *Id.* The Tenth Circuit has long followed that rule, holding that if a warrant affidavit contains "sufficient accurate or untainted evidence, the warrant is nevertheless valid." *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)).

[¶22] "Search warrants may issue only upon a showing of probable cause[.]" *Fosen v. State*, 2017 WY 82, ¶ 12, 399 P.3d 613, 616 (Wyo. 2017). Probable cause is "based on a two-fold finding: first, the factual situation described in the affidavit is sufficient to cause a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed[;] second, there must be an adequate showing that the fruits

---

not comport with the requirement under *Franks* that Deputy Case must have made a "knowing or reckless misrepresentation" that was necessary to a finding of probable cause. *See Williams*, 655 P.2d at 277.

of the crime or the evidence thereof are in the place to be searched." *Mathewson*, ¶ 20, 438 P.3d at 200 (internal quotations and citation omitted). "[T]he 'circumstances set forth in the affidavit must amount to more than a mere suspicion yet need not rise to the level of prima facie evidence of guilt.'" *Id.* (quoting *Rohda v. State*, 2006 WY 120, ¶ 6, 142 P.3d 1155, 1159 (Wyo. 2006) (citation omitted)).

[¶23] The evidence Deputy Case saw through the first window independently established probable cause to search the camper. Deputy Case testified that when he looked through the first window, he saw a Gatorade bottle in the kitchen that was filled with brown liquid and that had wax spilling out of it. Directly below the window, "where the table or the seating area would have been," Deputy Case saw a white powdery substance in a bag, along with a mirror, a folding knife, and a green leafy substance inside of a lid. Deputy Case included each of the items he saw below the window in his affidavit.[6] Although Mr. Workman repeatedly "question[ed]" whether Deputy Case could have seen these items through the first window, we "view the evidence in the light most favorable to the district court's determination." *Jennings*, ¶ 8, 375 P.3d at 790 (citation omitted). We therefore accept Deputy Case's account of which items he saw through the first window.

[¶24] Assuming the affidavit had included only those items visible through the first window, the warrant affidavit would have described a situation in which the camper contained the presence of potential drugs (i.e., the "white powdery substance" and the "green leafy substance") and drug paraphernalia (i.e., the folding knife and mirror with a white powdery substance on them). Such items would undoubtably have "cause[d] a reasonably cautious or prudent person to believe that a crime was being committed"— namely, possession of a controlled substance, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(iii). *Mathewson*, ¶ 20, 438 P.3d at 200 (citations omitted). Therefore, even after excluding the potentially "erroneous or unconstitutionally obtained information[,]" the affidavit contained sufficient untainted evidence to establish probable cause to search the camper. *See Sims*, 428 F.3d at 954.

## CONCLUSION

[¶25] Mr. Workman's conditional guilty plea did not preserve his *Franks* argument, leaving as his sole argument on appeal that Deputy Case unconstitutionally searched his camper when he lifted the plastic covering to look through the second window. However, Mr. Workman did not challenge Deputy Case's look through the first window, and we uphold the search warrant based on what Deputy Case viewed through that window. We

---

[6] Deputy Case also listed "several pipes" in the warrant affidavit, but he did not explain at the suppression hearing whether he saw those pipes through the first window, the second window, or both. Given the lack of clarity in the record on that issue and out of an abundance of caution, we will assume for the sake of the analysis that Deputy Case saw them only through the second window and exclude them from our probable cause analysis.

therefore need not address the lawfulness of Deputy Case's look through the second window.

[¶26]   We affirm.