# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 63

APRIL TERM, A.D. 2021

May 6, 2021

WILLIAM THOMAS MAHAFFY V,

Appellant
(Defendant),

v.                                                                                    S-20-0191

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
*Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.*

*Representing Appellee:*
*Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*FOX, J., delivers the opinion of the Court; BOOMGAARDEN, J., files a dissenting opinion, in which KAUTZ, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   William Mahaffy entered a conditional plea to methamphetamine possession and child endangerment after the district court denied his motion to suppress evidence obtained at the end of a traffic stop.   He now appeals, arguing the traffic stop was unlawfully extended before a drug dog alerted.   The State contends Mr. Mahaffy has changed horses and therefore waived the "new" argument he makes on appeal.   In the alternative, the State argues the stop was not unlawfully extended.   We decline the State's invitation to parse the issue on appeal, we conclude the stop was unlawfully extended after its initial purpose had been resolved, and we reverse and remand.

## *ISSUES*

> 1.   Did Mr. Mahaffy waive his right to appeal the district court's denial of his motion to suppress when he raised the issue of the unlawful extension of the stop while emphasizing one portion of the discussion and merely mentioning the portion he relies upon on appeal?
>
> 2.   Was the stop unlawfully extended in violation of the Fourth Amendment when the initial reason for the stop had been resolved by the time the drug dog alerted?

## *FACTS*

[¶2]   Mr. Mahaffy was the passenger in a car driven by his wife when he threw a lit cigarette out the car window in front of Campbell County Sheriff's Deputy Joshua Knittel's patrol car.   Deputy Knittel activated his body camera, turned on his overhead lights, and pulled the car over.   Deputy Knittel approached the driver's side of the car, explained the reason for the stop, and obtained the car registration, proof of insurance, and Mr. and Mrs. Mahaffy's driver's licenses.   Because the driver appeared very nervous, Deputy Knittel called for a drug dog on his way back to his car.   He then proceeded to write the citation for the burning cigarette.   While he was completing the citation, another deputy and a K-9 handler arrived.

[¶3]   About twelve minutes into the stop, the other deputy asked Mr. Mahaffy to get out of the car and accompanied him to the front of Deputy Knittel's patrol car.   Eleven seconds later, Deputy Knittel completed the citation and asked Mr. Mahaffy, "Is there a reason you guys are so nervous while I'm talking to you?"   That discussion lasted approximately thirty seconds.   Deputy Knittel then proceeded to explain the citation.   At thirteen minutes, fourteen seconds, the body camera shows the dog handler walk behind Mr. Mahaffy and nod.   Deputy Knittel testified:

1

> Q: [D]id you receive the information of the indication while you were still explaining the citation to Mr. Mahaffy?
>
> A: Yes. I believe, if I recall correctly, I'd looked at the PD officer, because he had stopped walking around the vehicle, and I believe he nodded in my direction, informing me there was an indication.

[¶4] Twenty-three seconds later, Deputy Knittel completed his explanation and began to inquire about drugs in the car. The entire extension of the stop, from the time Deputy Knittel finished writing the citation to the time he began questioning about drugs, took approximately one and a half minutes.

[¶5] The officers searched the car and found methamphetamine and a pipe. The State charged Mr. Mahaffy with two counts child endangerment (the Mahaffys' two children were in the back of the car) and one count methamphetamine possession. He moved to suppress "all evidence collected by law enforcement as [a] result of [the] traffic stop." The district court denied the motion after a hearing, and Mr. Mahaffy entered a conditional guilty plea, reserving the right to seek review of the order on his motion to suppress.

[¶6] Mr. Mahaffy timely appealed, arguing the duration of the stop was improperly extended in violation of the Fourth Amendment. The State contends Mr. Mahaffy raises a new argument on appeal that is waived because it was not raised below and, in the alternative, that Deputy Knittel's questioning did not unreasonably prolong the stop.

## *DISCUSSION*

[¶7] We first address the State's contention that Mr. Mahaffy waived the argument he now makes on appeal, and then turn to the constitutionality of the stop's duration.

### *I. Mr. Mahaffy Did Not Waive His Right to Appeal the District Court's Denial of His Motion to Suppress When He Raised the Issue of the Unlawful Extension of the Stop While Emphasizing One Portion of the Discussion and Merely Mentioning the Portion He Relies Upon on Appeal*

### A. Standard of Review

[¶8] The record here is clear and the facts giving rise to waiver are undisputed, so we apply a de novo standard of review. *Mills v. State*, 2020 WY 14, ¶ 13, 458 P.3d 1, 7 (Wyo. 2020).

**B.    Waiver**

[¶9]    The State contends Mr. Mahaffy waived his argument on appeal because in his motion to suppress, and at the argument on the motion, he asserted that the duration of the stop was improperly extended because of the time Deputy Knittel spent explaining the citation; while on appeal, he argues that the questions regarding nervousness caused the offending extension of the stop.  It urges this Court to dissect the arguments below for the precise words that it contends are necessary to preserve argument on each segment of the stop's extension.

[¶10]    A guilty plea "waives appellate review of all non-jurisdictional claims," except for those preserved under W.R.Cr.P. 11(a)(2), "which 'allows a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion.'" *Ward v. State*, 2015 WY 10, ¶ 15, 341 P.3d 408, 411 (Wyo. 2015) (citations omitted). "[A]n appellant's argument is limited to those issues clearly brought to the district court's attention." *Brown v. State*, 2019 WY 42, ¶ 12, 439 P.3d 726, 730-31 (Wyo. 2019) (citation omitted).  In addition to our specific rules governing conditional pleas, we adhere to the general rule limiting appellate issues to those raised below because "[i]t is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court." *Smith v. State*, 2021 WY 28, ¶ 49, 480 P.3d 532, 543 (Wyo. 2021) (quoting *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 69, 458 P.3d 832, 849 (Wyo. 2020)).  It is even less fair to deprive an appellant of a legitimate constitutional argument by applying an overly technical waiver analysis.  That is why we give the appellant the benefit of the doubt, and "read any ambiguity in the conditional plea agreement 'against the Government and in favor of a defendant's appellate rights.'" *Brown*, 2019 WY 42, ¶ 13, 439 P.3d at 731 (quoting *U.S. v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004)).

[¶11]    Mr. Mahaffy's motion to suppress is only three pages, but it serves its purpose—to advise the State and the district court of the factual basis and the law upon which he relies.  The motion contains the general statement "that law enforcement may not prolong a traffic stop with a drug sniffing dog beyond the purposes of the traffic stop absent reasonable suspicion," citing *Mills*, 2020 WY 14, 458 P.3d 1, and *Rodriguez v. U.S.*, 575 U.S. 348, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015);[1] and it states, "The subsequent drug investigation . . . wasn't lawful once the citation was completed."  At the hearing on the motion to suppress, Mr. Mahaffy's counsel further expanded the scope of the issue:

---

[1] *Rodriguez* is the seminal case that establishes "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."  575 U.S. at 350-51, 135 S.Ct. at 1612 (alterations in original) (citation omitted).

The issue here today would be the mission of the traffic stop in this case, and I would submit to the Court that, per the testimony of Deputy Knitt[el], the traffic stop's mission was to rectify and determine why this lit substance, cigarette was thrown out the window and to properly address that issue, and he had explained to you that there was some general nervousness exhibited by the driver of the vehicle[.]

Counsel concluded:

And I would submit to the Court that there is no suspicion related to the search in this particular case as to my client and, therefore, it was . . . ***an unlawful extension of the traffic stop by using a drug dog sniff to extend it in order to accomplish a further investigation that, under the terms of these two cases, is unlawful*** on the part of the Campbell County Sheriff's Office.

(Emphasis added.)

[¶12]  In its decision letter denying the motion to suppress, the district court recognized "During his initial contact with the vehicle occupants, Deputy Knittel observed that the driver, Raina Mahaffy, appeared very nervous with shaking hands."  The court began its discussion by framing the issue: "In *Defendant's Motion to Suppress Evidence*, he argues the purpose of the traffic stop was concluded once Deputy Knittel had finished preparing the citation for throwing a burning substance from a vehicle."  It went on to discuss the time required to explain the citation, in light of our decision in *Mills*, 2020 WY 14, 458 P.3d 1, and the time spent on the explanation is certainly the primary aspect of the court's discussion as well as Mr. Mahaffy's.  But the decision letter goes on to recognize:

He [Deputy Knittel] also asked Defendant why Defendant and his wife were so nervous.  Mr. Mahaffy stated he and his wife had had an argument about driving shortly before the traffic stop.  This conversation between Deputy Knittel and Mr. Mahaffy took approximately one and a half minutes, and the canine free-air sniff required only a fraction of that time.

The district court was referring to the conversation after Deputy Knittel finished preparing the citation, including both the nervousness questions and the citation explanation.  The one-and-a-half-minute extension of the stop after Deputy Knittel had finished writing the citation is the issue that was clearly brought to the court's attention, and the issue the court addressed in its decision letter.

4

[¶13] This is not a case like *Workman v. State*, 2019 WY 128, 454 P.3d 162 (Wyo. 2019). There, we held that a conditional plea, which preserved a motion to suppress that challenged a warrantless search, did not preserve an entirely new issue that the appellant attempted to raise on appeal, the alleged misrepresentations in the affidavit for the search warrant. *Id.* at ¶¶ 13, 19, 454 P.3d at 166-67. In *Kunselman v. State*, 2008 WY 85, ¶ 12, 188 P.3d 567, 570 (Wyo. 2008), we held that the appellant could not argue on appeal that the stop was not justified at its inception because she had only "focused on the scope and duration of the stop and the subsequent search of her purse" in her motion to suppress and the suppression hearing. In *Lindsay v. State*, 2005 WY 34, ¶ 19 n.7, 108 P.3d 852, 857 n.7 (Wyo. 2005), we declined to consider appellant's challenge to the reasonableness of the initial stop when appellant only challenged the reasonableness of the further detention before the district court. *See also Robinson v. State*, 2019 WY 125, ¶¶ 18, 19, 454 P.3d 149, 156 (Wyo. 2019) (appellant raised the absence of reasonable suspicion and the extension of the duration of the stop in his motion to suppress; Court declined to consider his argument on appeal challenging the initial pursuit); 3 Wayne R. LaFave et al., *Criminal Procedure* § 10.1(b), at n.20, Form of the motion (4th ed.), Westlaw (database updated Dec. 2020). We have generally rejected arguments on appeal that present issues or theories not raised below, but we reject attempts to dissect the issue in an analytical exercise that does not advance fairness to the district court or to the appellant.

[¶14] In *Brown*, the appellant had filed a motion to suppress that alleged the scope of the stop was improperly extended without reasonable suspicion. *Brown*, 2019 WY 42, ¶ 14, 439 P.3d at 731. On appeal, Mr. Brown argued the scope of the stop was unreasonably extended both at approximately the seven-minute mark, when the deputy returned his identification, and at approximately the nine-minute mark, when Mr. Brown revoked his consent and asked to leave. *Id.* at ¶ 15, 439 P.3d at 731. We acknowledged that the focus of the argument at the suppression hearing was on the extension beyond nine minutes, but we rejected the State's contention that the argument arising at seven minutes was waived. We said the district court did not specifically determine when the traffic stop was completed, and we concluded, "Mr. Brown's general allegation that [the officer] unlawfully expanded the scope of the stop without reasonable articulable suspicion has not changed." *Id.* The same rationale applies to Mr. Mahaffy's case. The issue he raised below was the extension of the stop after Deputy Knittel had completed the citation. His counsel may have emphasized the argument on the explanation of the citation, but the nervousness questions were raised at the suppression hearing, they were addressed by the court, and, just as in *Brown*, they fall under the general allegation that the scope of the stop was unlawfully extended. Further, as in *Brown*, "this is not a case in which the record is undeveloped, thus precluding our review." *Id.* at ¶ 17, 439 P.3d at 731 (citations omitted). The evidence at the hearing, including Deputy Knittel's body camera video, encompassed the entire stop.

[¶15] In *Rodriguez v. State*, 2019 WY 25, ¶ 37, 435 P.3d 399, 410 (Wyo. 2019), we embraced the rule that "failure to file a W.R.Cr.P. 12(b)(3)-required motion bars

appellate review of . . . suppression questions," absent a showing of good cause. In *Rodriguez*, however, the defendant did not file a motion to suppress. *Id.* at ¶ 23, 435 P.3d at 405. Now, the State would have us take waiver into a new realm by barring, not just appellate argument on an issue never raised, but also argument on specific facts within an issue. We decline to do so because the job of the judiciary is to apply the rule of law to dispense justice, not to seek ways to bar the door to the courts. Wyo. Const. art. 1, § 8.

## II. The Stop was Unlawfully Extended in Violation of the Fourth Amendment When the Initial Reason for the Stop Had Been Resolved by the Time the Drug Dog Alerted

### A. Standard of Review

[¶16] We adopt a district court's factual findings on a motion to suppress unless they are clearly erroneous. *Kern v. State*, 2020 WY 60, ¶ 6, 463 P.3d 158, 160 (Wyo. 2020). "The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo." *Id.* (quoting *Brown*, 2019 WY 42, ¶ 10, 439 P.3d at 730).

### B. Extension of the Stop

[¶17] The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Because "[a] traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle[,]" a law enforcement officer must conduct it "in accordance with the Fourth Amendment." *Pier v. State*, 2019 WY 3, ¶ 16, 432 P.3d 890, 896 (Wyo. 2019) (citations omitted).

[¶18] We apply the two-part inquiry from *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) to determine whether a traffic stop and resulting seizure was reasonable: "(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance." *Pier*, 2019 WY 3, ¶ 17, 432 P.3d at 896 (citations omitted). Mr. Mahaffy does not dispute the initial traffic stop was justified; he focuses on the second part of the *Terry* test.

[¶19] "The second part of the *Terry* inquiry is the reasonableness of the detention." *Pier*, 2019 WY 3, ¶ 19, 432 P.3d at 897 (citation omitted). The "investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Brown*, 2019 WY 42, ¶ 20, 439 P.3d at 732 (citation omitted). "During a routine traffic stop, an officer may request a driver's license, proof of insurance, and vehicle registration, run a computer check, and issue a citation or warning." *Id.* (citation omitted). The driver and vehicle may only be detained for the "time reasonably

6

necessary to complete these routine matters." *Id.* (citations omitted). When "the initial reason for [the] stop has been resolved," the officer needs "specific, articulable facts and rational inferences giving rise to reasonable suspicion that another crime has been or is being committed to justify a continued detention." *Id.* (citations omitted). Mr. Mahaffy concedes the Fourth Amendment does not prohibit use of a drug dog so long as it does not extend the duration of the stop, citing *Wallace v. State*, 2009 WY 152, ¶ 15, 221 P.3d 967, 971 (Wyo. 2009), and *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005). The State does not contend Deputy Knittel had reasonable suspicion prior to learning the dog had alerted. Thus, the question for our resolution is whether the one-and-a-half minute discussion, after he completed the citation, was an unconstitutional extension of the stop.

[¶20] On appeal, Mr. Mahaffy discusses only the constitutionality of Deputy Knittel's questions regarding nervousness, omitting any mention of *Mills* and the explanation of the citation. We therefore confine our discussion to that portion of the extension as well. Mr. Mahaffy relies on *Campbell v. State*, 2004 WY 106, 97 P.3d 781 (Wyo. 2004), in which we held that a trooper's question about drugs during a routine traffic stop "was unrelated to the purpose of the initial stop—a possible expired registration—and, therefore, was proper only if the trooper had a reasonable articulable suspicion that Campbell was engaged in illegal activity." *Id.* at ¶ 13, 97 P.3d at 785. Because the trooper had neither reasonable articulable suspicion nor consent, we reversed the district court's denial of Mr. Campbell's motion to suppress. *Id.* at ¶ 23, 97 P.3d at 787. In response, the State argues *Campbell* has been superseded by the United States Supreme Court's decisions in *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), and *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), which, the State contends, have clarified that "suppression is only warranted where unrelated inquiries measurably extended the stop's duration." The State correctly summarizes the holdings in those cases, *see Arizona*, 555 U.S. at 333, 129 S.Ct. at 788 (citing *Muehler*, 544 U.S. at 100-01, 125 S.Ct. at 1471) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). However, it too, misses the mark. We are concerned here with inquiries that did extend the duration of the stop because they occurred after Deputy Knittel had completed the citation, and the initial reason for the stop had been resolved. The Supreme Court directly and clearly addressed this question in *Rodriguez*, 575 U.S. at 350-51, 135 S.Ct. at 1612, where it held, "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (alterations in original) (quoting *Caballes*, 543 U.S. at 407, 125 S.Ct. at 837).

[¶21] The district court apparently based its ruling on its finding that the extension of the stop was *de minimis*, when it held the "conversation between Deputy Knittel and

7

Mr. Mahaffy took approximately one and a half minutes, and the canine free-air sniff required only a fraction of that time." But the United States Supreme Court soundly rejected the argument that a *de minimis* extension of a stop is acceptable in *Rodriguez*, 575 U.S. at 350-53, 135 S.Ct. at 1612-13. Deputy Knittel unlawfully extended the duration of the traffic stop after he had completed the citation by asking unrelated questions about nervousness.

[¶22] For these reasons, we conclude Mr. Mahaffy did not waive his argument that the stop was unlawfully extended, and his Fourth Amendment rights were violated. We reverse and remand for further proceedings consistent with this opinion.

**BOOMGAARDEN, Justice,** dissenting, in which **KAUTZ, Justice,** joins.

[¶23] "We have cautioned that although a conditional guilty plea provides a mechanism for appellate review, it does not provide carte blanche permission to present any and all arguments on appeal." *Brown v. State*, 2019 WY 42, ¶ 12, 439 P.3d 726, 730 (Wyo. 2019) (citation omitted). "Rather, an appellant's argument is limited to those issues clearly brought to the district court's attention." *Id.* ¶ 12, 439 P.3d at 730–31 (citation omitted). I respectfully dissent, as I believe the majority opinion undercuts this longstanding rule. It further attributes a ruling to the district court which the court never made when it denied Mr. Mahaffy's motion to suppress—that Mr. Mahaffy was not entitled to suppression of the evidence seized because the extension of the stop was *de minimis*—and which the record simply does not support. By my reading, the record and existing law command but one conclusion—Mr. Mahaffy waived the argument he brings forth on appeal by not clearly bringing the issue to the district court's attention.

[¶24] Applying the majority opinion's analysis, so long as a defendant asserts that law enforcement unlawfully, or unreasonably, extended the traffic stop, by, for example, citing to *Rodriguez v. United States*, 575 U.S. 348, 350–51, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015) ("A seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (citation omitted)), he need not clearly identify for the district court the unlawful or unreasonable action(s) or case(s) on which he relies. Instead, the "mere mention" of law enforcement's actions during the stop, in any context, will suffice to preserve his right to argue on appeal that his stop was unreasonably prolonged based on different actions under a different legal analysis than he presented to the district court. For reasons I explain below, this is an unfortunate departure from our precedent.

[¶25] The purpose of our longstanding rule as set forth above in *Brown* is, as the majority opinion states, "to advise the State and the district court of the factual basis and the law upon which [the defendant] relies" for his motion. Specifying the particular grounds for suppression is a matter of notice to the district court and the prosecution. *See Brown*, ¶ 12, 439 P.3d at 730-31 (notice to the court); *Bittleston v. State*, 2019 WY 64, ¶ 37 n.9, 442 P.3d 1287, 1296 n.9 (Wyo. 2019) ("[I]t is unfair to the State to rule on a suppression claim first raised on appeal, at a point when the State has no opportunity to make a record to defend against the claim." (citation omitted)); 6 Wayne R. LaFave, *Search and Seizure* § 11.2(a) (6th ed.), Westlaw (database updated Sept. 2020) ("[I]t is commonly required that the motion 'must specify with particularity the grounds upon which the motion is based.' This burden of raising an issue exists even if, once raised, the burden of proof will be on 'the prosecution to disprove the defendant's contentions,' and whether defendant's motion is sufficiently specific 'does not depend on the allocation of the burden of proof.'" (footnotes omitted)). After comparing the argument Mr. Mahaffy presents to us with the argument he presented to the district court, I must

9

disagree with the majority opinion's conclusion that Mr. Mahaffy's motion serves this purpose.

[¶26] In his appellate brief, Mr. Mahaffy asserts:

> Deputy Knittel prolonged the stop as he engaged in a colloquy which was devoted to inquiries having nothing to do with the issuance of a citation for throwing a lit cigarette out of the passenger window. Deputy Knittel began a line of questioning pertaining to why Mr. Mahaffy's wife appeared nervous, and what the two were in an argument over. After this short conversation, the officer then returned to issuing the citation, and reviewed the options as to how and in what manner Mr. Mahaffy might dispose of the citation. Although the break in the issuance of the citation and the line of questioning might not have been lengthy, it is unarguable that it occurred, that it occurred during the crucial point in the investigation, and that it prolonged the issuance of the citation long enough for Officer Luc[a]s to perform the free air [sniff].

[¶27] In contrast, in his motion to suppress and at the hearing on his motion Mr. Mahaffy quite specifically, albeit erroneously, relied on *Mills v. State*, 2020 WY 14, 458 P.3d 1 (Wyo. 2020)[2] to argue to the district court that:

> According to the recent *Mills v. State* decision, the traffic stop should have concluded once Deputy Knittel had completed his traffic citation for littering the cigarette butt.
>
> . . . .
>
> The mission of Deputy Knittel's traffic stop in this case was the investigation for littering a cigarette butt. His

---

[2] In *Mills* "[w]e decline[d] to hold that Deputy Borgialli's purported desire to 'explain' the warning citation [to Mr. Mills] after he completed it was related to the purpose of the traffic stop in these circumstances." ¶ 28, 458 P.3d at 11. We concluded that unless the deputy had reasonable suspicion of other criminal activity—an issue we addressed later in the decision—"the Fourth Amendment obligated Deputy Borgialli to return Mr. Mills' documents promptly and allow him to continue on his way." *Id.*

*Mills* did not set a bright-line rule that a law enforcement officer may never explain a citation to its recipient unless he has reasonable suspicion of other criminal activity. *See id.* ¶¶ 21–28, 458 P.3d at 9–11. We expressly limited our holding to the facts and circumstances presented. *See id.* ¶ 28, 458 P.3d at 11.

10

investigation into that violation was completed once Mahaffy admitted to the littering, Deputy Knittel received clear returns, and he issued the written citation. The only reason the stop lasted any longer was that Knittel was arranging to have Dep. Stearns escort Mahaffy out of the car for the purposes of a rather extensive explanation [] on the citation. The subsequent drug investigation of four officers and a K-9 wasn't lawful once the citation was completed. Like in *Mills*, in the absence of reasonable [suspicion], the Fourth Amendment obliged Deputy Knittel to return Mr. Mahaffy's documents, including the citation to him and the mother and allowed them to continue on their way. The subsequent dog sniff and subsequent search revealing contraband was an unlawful extension of the duration of the traffic stop and a violation of [Mahaffy's] rights.

[¶28] At the suppression hearing, defense counsel opened by arguing the motion "addresses an important issue as to whether an officer can depart from the mission of a traffic stop and engage in . . . a [free air] sniff of a drug dog[.]" She then cited *Rodriguez v. United States* and *Mills v. State*. During the hearing neither counsel asked any witness to identify exactly when the dog alerted. No one asked Deputy Knittel why he inquired about the driver's hands shaking or the argument between the Mahaffys. Accordingly, no record exists and the district court made no findings on those matters.

[¶29] In closing, defense counsel argued the officer improperly extended the traffic stop by explaining the citation, which required reversal under her reading of *Mills*. Counsel appeared to further claim that the drug dog should not have been called because it was the driver, Mrs. Mahaffy, who was nervous, not Mr. Mahaffy, and that somehow the free air sniff prolonged the stop. Counsel mentioned the driver's nervousness twice in closing, pointing out only that Mr. Mahaffy was not the one with nervousness. Counsel never mentioned the nervousness questions and never identified when the purpose of the stop ended or when the drug dog alerted relative to those questions. Those issues were never addressed in the suppression hearing. Accordingly, neither Mr. Mahaffy's motion to suppress nor his argument put the district court or the State on notice that he also relied on Deputy Knittel's nervousness questions as the reason the traffic stop was unlawfully extended.

[¶30] The district court's decision letter underpins that Mr. Mahaffy did not put the court on notice it should rule on whether the nervousness questions were improper and thus unreasonably prolonged the stop. *See Brown*, ¶ 12, 439 P.3d at 730–31. Summarizing Mr. Mahaffy's suppression argument, the court noted he (1) argued the traffic stop's purpose concluded when Deputy Knittel finished writing the citation; (2) argued the dog sniff and vehicle search were thus "illegal due to the impermissible extension of the

11

stop"; and (3) relied on *Mills* to support his position. The court therefore discussed *Mills*, but found nothing improper about Deputy Knittel explaining the citation to Mr. Mahaffy under the circumstances. The decision letter mentioned the deputy's questions about Mrs. Mahaffy's nervousness, as well as Mr. Mahaffy's response about the couple's argument, only in passing—nowhere did the district court conclude or even suggest that the extension of the stop was *de minimis*, as the majority opinion states.

[¶31] Mr. Mahaffy's appellate argument changes the inquiry from whether it was improper for Deputy Knittel to engage in a citation explanation at all under *Mills* to whether some of the specific questions Deputy Knittel asked during the explanation were improper because they did not relate to the citation. Mr. Mahaffy has abandoned *Mills* on appeal and now relies on a completely different case, *Campbell v. State*, 2004 WY 106, 97 P.3d 781 (Wyo. 2004). He never cited to or relied on *Campbell* in the district court.

[¶32] Moreover, unlike in *Brown*, which the majority opinion deems analogous to this case, questions of fact and law pertaining to Mr. Mahaffy's appellate argument were not developed in the district court. For example, had the prosecutor understood he needed to develop a record on why Deputy Knittel asked the nervousness questions and precisely how the timing of those questions related to the dog's alert, and had the district court made findings on that issue, we could determine whether the nervousness questions were "the type of 'negligibly burdensome' inquiries directed at ensuring officer safety" or "were posed as a pretext to 'facilitate' a detour into investigating other crimes." *See, e.g.*, *United States v. Cortez*, 965 F.3d 827, 839–40 (10th Cir. 2020). This Court should not make that determination on an underdeveloped record.

[¶33] And even assuming the nervousness questions were improper, the record is also underdeveloped on precisely when the dog alerted relative to Deputy Knittel asking the nervousness questions. Deputy Knittel testified the dog alerted—a fact Mr. Mahaffy has never disputed—but the deputy did not identify precisely when that occurred, and Officer Lucas did not testify at the suppression hearing. The majority opinion suggests the dog alerted 13:14 minutes into the stop, well after Deputy Knittel asked the first nervousness question, *see supra* ¶ 3. But the record and law present a much closer question.

[¶34] Deputy Knittel's body camera captured some of what Officer Lucas and the dog were doing during the citation explanation from 12:00 to 12:25 minutes into the stop. We can discern that the dog probably alerted while Officer Lucas walked him along the passenger side of the car because, on reaching the front, they veered out and away from the car; Officer Lucas never walked the dog along the driver side of the car. Later in the video, while searching the car, Deputy Knittel and Officer Lucas briefly discussed the fact that the dog alerted almost immediately. However, Officer Lucas walked the dog along the passenger side of the car so close in time to when Deputy Knittel asked the first nervousness question approximately 12:20 minutes into the stop that it is not possible to

12

determine with certainty whether the dog alerted before Deputy Knittel began questioning Mr. Mahaffy about nervousness.

[¶35] The timing of the dog alert leads to more unanswered questions. For example, does it matter whether Deputy Knittel knew the dog alerted before he asked the first nervousness question? If so, when did Deputy Knittel first know the dog alerted? If he did not know the dog alerted before he asked the first nervousness question, is that dispositive? Or could Officer Lucas' knowledge of the dog alert be imputed to Deputy Knittel under the collective knowledge doctrine? *See United States v. Shareef*, 100 F.3d 1491, 1503–04 (10th Cir. 1996) (discussing whether the collective knowledge of officers applies absent evidence the officers communicated with each other); 2 Wayne R. LaFave, *Search and Seizure* § 3.5(c) (6th ed.), Westlaw (database updated Sept. 2020) (discussing different approaches to situations where "the arresting or searching officer attempts to justify his action on the ground that other officers were in fact in possession of the underlying facts justifying his action" (footnotes omitted)). From my review of the record, these questions remain unanswered because Mr. Mahaffy did not put the timing of the dog alert at issue when he argued that the traffic stop should have ended as soon as Deputy Knittel finished writing the traffic citation. Absent answers to these questions, we cannot and should not conclude the officers violated Mr. Mahaffy's Fourth Amendment rights.

[¶36] For all these reasons, I conclude Mr. Mahaffy waived the suppression argument he brings forth on appeal and I dissent from the majority opinion's conclusion his Fourth Amendment rights were violated.