# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 60

**APRIL TERM, A.D. 2020**

**May 14, 2020**

SHAWN MICHAEL KERN,

Appellant
(Defendant),

v.

S-19-0242

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

*Office of the Public Defender:  Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.*

*Representing Appellee:*

*Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Kelly D. Mullen, Assistant Attorney General.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    A jury convicted Shawn Kern of possession with intent to deliver a controlled substance.  On appeal, Mr. Kern argues that the district court erred by denying his motion to suppress evidence.  We affirm.

## ISSUE

[¶2]    Did the district court err in denying Mr. Kern's motion to suppress?[1]

## FACTS

[¶3]    On a snowy night in Gillette, Wyoming, Officer Andy Lucus noticed a blue vehicle, later identified as belonging to Mr. Kern, that matched the description of a car that had been involved in potential drug transactions.  Officer Lucus followed the vehicle which, due to snowy conditions, left its lane of travel several times and slid through a red light.  Officer Lucus followed the car on an unusual and meandering route to the Sundance Lounge.

[¶4]    Mr. Kern eventually parked his car in the lot behind the Sundance Lounge and was on his way into the bar when Officer Lucus approached him and asked if they could talk.  Mr. Kern agreed, and Officer Lucus requested his driver's license.  Officer Lucus reported to dispatch that he was talking to Mr. Kern outside the Sundance Lounge and then questioned Mr. Kern about his route.  Mr. Kern explained he had been trying to go the safest way for the road conditions.  Officer Lucus told Mr. Kern he was not stopping him or issuing a citation for the driving infractions he witnessed because he recognized the conditions were challenging.  While they were talking, two other officers, Officer Johnson and Sergeant Brothers, arrived on the scene.  Officer Lucus returned Mr. Kern's license and asked if he had proof of insurance.  Mr. Kern could not locate his proof of insurance and Officer Lucus decided to write a "no insurance" citation.  Officer Lucus went to his patrol car to write the citation, and Officer Johnson retrieved his K-9, a German Shepherd named Lord, to perform a free-air sniff of Mr. Kern's vehicle.  Lord alerted to the smell of drugs.  Officer Lucus searched the vehicle and found methamphetamine.

[¶5]    The State charged Mr. Kern with possession with intent to deliver a controlled substance under Wyo. Stat. Ann. § 35-7-1031(a)(i) (LexisNexis 2019).  Mr. Kern filed a

---

[1] While "[o]ur state constitution provides protection of individual rights separate and independent from the protection afforded by the U.S. Constitution" and "[t]he Wyoming Supreme Court continues to be willing to independently interpret the provisions of the Wyoming Constitution," Mr. Kern did not raise an independent state constitutional claim, therefore we limit our review to the alleged Fourth Amendment violation.  *Sheesley v. State*, 2019 WY 32, ¶ 14, 437 P.3d 830, 836 (Wyo. 2019).

motion to suppress evidence, arguing that the methamphetamine was found as a result of an illegal detention. The district court found that the encounter was consensual until Officer Lucus decided to write Mr. Kern a citation for not having insurance, after which the detention lasted, at most, one minute and fifty seconds. It held that Officer Lucus' brief detention of Mr. Kern was reasonable under the totality of the circumstances.

## *STANDARD OF REVIEW*

[¶6] When we review a district court's denial of a motion to suppress evidence, we adopt its factual findings, unless they are clearly erroneous. *Brown v. State*, 2019 WY 42, ¶ 10, 439 P.3d 726, 730 (Wyo. 2019) (citing *Rodriguez v. State*, 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018)); *see also Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016). "We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions.'" *Brown*, 2019 WY 42, ¶ 10, 439 P.3d at 730 (quoting *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008)). Where the district court did not make specific findings of fact on issues before it, this Court will uphold the general ruling of the district court if it is supported by any reasonable view of the evidence. *Brown*, 2019 WY 42, ¶ 10, 439 P.3d at 730 (citing *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009)). "The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo." *Brown*, 2019 WY 42, ¶ 10, 439 P.3d at 730 (quoting *Rodriguez*, 2018 WY 134, ¶ 15, 430 P.3d at 770).

## *DISCUSSION*

[¶7] There are three tiers of interactions between citizens and law enforcement:

> The least intrusive contact between a citizen and police is the consensual encounter which "involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning." *Wilson* [*v. State*], 874 P.2d [215,] 220 [(Wyo. 1994)]. The consensual encounter is not a seizure and does not engage the Fourth Amendment. The second tier is the investigatory [detention] or *Terry* stop, named after the seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory detention involves a seizure and, consequently, the protections of the Fourth Amendment are implicated. *Wilson*, 874 P.2d at 220. However, because of its limited nature, a law enforcement officer must show only "the presence of specific and articulable facts and rational inferences which give rise to a

2

> reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.* The most intrusive encounter between police and a citizen is, of course, an arrest. An arrest "requires justification by probable cause to believe that a person has committed or is committing a crime." *Id.*

*Custer v. State of Wyoming*, 2006 WY 72, ¶ 13, 135 P.3d 620, 624-25 (Wyo. 2006). Mr. Kern concedes that the encounter with Officer Lucus began as consensual but asserts that it changed to an unlawful investigatory detention when Officer Lucus requested proof of insurance. The State argues that the encounter was consensual until Officer Lucus decided to write Mr. Kern a citation for not having car insurance or, in the alternative, that the exclusionary rule should not apply because law enforcement could have conducted a free-air sniff of the car even if Officer Lucus illegally detained Mr. Kern.

[¶8]  Citizens are entitled to Fourth Amendment protections when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Wilson*, 874 P.2d at 220 (quoting *Terry*, 392 U.S. at 19 n.16, 88 S.Ct. at 1879 n.16). Courts evaluating whether interactions with law enforcement implicate the Fourth Amendment must determine whether a reasonable person would feel free to leave the encounter. *Wilson*, 874 P.2d at 221. Below, the district court analyzed the encounter between Officer Lucus and Mr. Kern and determined when it ceased to be consensual and became an investigatory detention.[2] We need not decide whether the encounter between Mr. Kern and Officer Lucus was consensual or an investigatory detention because, under these circumstances, that distinction would not affect our conclusion that Lord's free-air sniff was lawful.

[¶9]  This case is unlike traffic stop cases where a suspect is detained at the scene until a dog arrives to sniff a vehicle or container, because Mr. Kern had left his vehicle and was walking to the Sundance Lounge. Generally, in traffic stop cases, we examine whether the dog sniff extends the duration or scope of the seizure. *See, e.g.*, *Brown*, 2019 WY 42, ¶¶ 6-7, 439 P.3d at 729-30 (finding that the police officer lacked reasonable suspicion to further detain the suspect for a dog sniff after returning his identification and completing the traffic stop); *Pier v. State*, 2019 WY 3, ¶¶ 9-10, 432 P.3d 890, 895 (Wyo. 2019); *Engdahl v. State*, 2014 WY 76, ¶ 14, 327 P.3d 114, 118 (Wyo. 2014); *Wallace v. State*,

---

[2] The United States Supreme Court set forth a list of factors that may indicate a seizure under the Fourth Amendment, including, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Wilson*, 874 P.2d at 220. The district court considered these factors in reaching its decision.

2009 WY 152, ¶¶ 4-5, 221 P.3d 967, 968-69 (Wyo. 2009); *see also Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005). Here, there was no traffic stop. The nature of the encounter between Officer Lucus and Mr. Kern was unrelated to the presence of the car in the public parking lot. Mr. Kern was not trying to reach his car to leave, and law enforcement was free to conduct a free-air sniff of the vehicle. Similarly, whether the encounter between Officer Lucus and Mr. Kern remained consensual, or had shifted to an investigatory detention, is irrelevant under these circumstances because the free-air sniff was lawful whether Mr. Kern was free to leave or not.

[¶10] "A 'canine sniff' by a well-trained narcotics detection dog, [does] not constitute a 'search' within the meaning of the Fourth Amendment." *U.S. v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983); *Pier*, 2019 WY 3, ¶ 31, 432 P.3d at 899 ("A dog sniff of the exterior of a vehicle is not a search under the Fourth Amendment."); *Morgan v. State*, 2004 WY 95, ¶ 18, 95 P.3d 802, 807-08 (Wyo. 2004) ("Morgan was not subjected to a search protected by the Fourth Amendment when [law enforcement] ordered the canine sniff of his vehicle."). Because it is not a search, law enforcement does not need probable cause, reasonable suspicion, or consent to run a trained drug dog around vehicles in a public parking lot. *E.g.*, *U.S. v. Friend*, 50 F.3d 548 (8th Cir. 1995) (finding that a dog sniff of a parked car on a public street or alley does not amount to a search under the Fourth Amendment), *vacated and remanded on other grounds*, 517 U.S. 1152, 116 S.Ct. 1538, 134 L.Ed.2d 643 (1996); *U.S. v. Ludwig*, 10 F.3d 1523 (10th Cir. 1993) (finding that random, suspicionless dog sniffs of vehicles in a motel parking lot did not constitute a search under the Fourth Amendment); *Dowty v. State*, 210 S.W.3d 850 (Ark. 2005) (finding no search within the meaning of the Fourth Amendment when law enforcement followed two people suspected of selling drugs to a restaurant and deployed drug dog to sniff their vehicle when they parked and went inside); *State v. Garcia*, 535 N.W.2d 124 (Wis. 1995) (finding that a dog sniff of the exterior of a car parked in a motel parking lot did not constitute a search under the Fourth Amendment because there is no legitimate expectation of privacy around air space of a car in a parking lot); *See State v. Williams*, 2004 WY 53, ¶ 20, 90 P.3d 85, 90-91 (Wyo. 2004) ("[A] significant, if not overwhelming, number of courts have concluded that a trained and reliable drug detection dog's alert during an exterior sniff of an automobile provides probable cause to search the automobile when the automobile is parked or stopped in a place where the drug detection dog's law enforcement officer has a right to be.").

[¶11] Lord is a trained narcotics detection dog and he and Officer Johnson are a certified team. The Sundance Lounge is a business with a parking lot that is open to the public. Mr. Kern's vehicle was parked in the Sundance Lounge parking lot when Lord conducted his free-air sniff. "Under the United States Constitution, when a trained and reliable drug dog alerts during an exterior sniff of a vehicle, there is probable cause to search that vehicle." *Pier*, 2019 WY 3, ¶ 32, 432 P.3d at 899 (quoting *Yoeuth v. State*, 2009 WY 61,

¶ 34, 206 P.3d 1278, 1286 (Wyo. 2009)).  Therefore, the officers had probable cause to search the vehicle for drugs, and the district court correctly denied Mr. Kern's motion to suppress.

[¶12]   Affirmed.