# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 20

### OCTOBER TERM, A.D. 2023

February 14, 2024

DANIEL ALEXIS CHACE,

Appellant
(Defendant),

v.

S-23-0153

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Daniel A. Chace appeals the district court's denial of his motion to suppress evidence obtained through a search warrant that was executed after 10:00 p.m.  We affirm the district court's decision.

*ISSUE*

[¶2]     The single issue before us is whether the district court erred when it denied Mr. Chace's motion to suppress.

*FACTS*

[¶3]     On the evening of August 12, 2022, law enforcement initiated a traffic stop after observing a vehicle failing to stop at a stop sign.  Mr. Chace's brother was the driver of that vehicle.  During the stop, the officer observed the female passenger in the vehicle not wearing a seatbelt.  The officer asked the driver and the passenger for identification and returned to the patrol vehicle to run their information through dispatch.  While awaiting information from dispatch, a K-9 unit arrived at the traffic stop, performed an open-air sniff outside the vehicle, and alerted for drugs.  A search of the vehicle followed.  Law enforcement found methamphetamine and paraphernalia in the vehicle and in the female passenger's bag.  Officers arrested the driver and the female passenger.

[¶4]     Later the same evening, law enforcement requested a search warrant to search the driver's residence.  Law enforcement exchanged several calls with the magistrate before the warrant was issued.  During a call at approximately 9:25 p.m., the officer requesting the warrant asked the magistrate to affirm they would have until 10:00 p.m. to execute the warrant.  The magistrate affirmed that deadline, noted that exigent circumstances would need to exist to extend the deadline after 10:00 p.m., and suggested law enforcement reach out to the County Attorney.  The officer then asked if the magistrate "would be okay with" an extended deadline.  The magistrate affirmed that an extension could be approved, depending on the contents of the affidavit, but that he could not prejudge that before reviewing the affidavit.

[¶5]     According to law enforcement's testimony at the suppression hearing, the officer then emailed the magistrate a probable cause affidavit to accompany the warrant request, identified exigent circumstances in that affidavit, and asked that the warrant's time limit be extended from 10:00 p.m. to 11:00 p.m.  Two officers testified that the magistrate approved the extension of time to 11:00 p.m. in telephone conversations and through an email.  The magistrate and the requesting officer had some difficulty with the email and pdf software used for requesting and signing warrants.  In particular, law enforcement's draft warrant set the expiration time as 11:00 p.m., as they discussed, but when the magistrate sent the electronically-signed warrant back to law enforcement, the document's

1

template reverted to the standard time of 10:00 p.m. Before executing the warrant they initially received, law enforcement called the magistrate again at 9:57 p.m. to identify the problem with the time on the warrant, noting that the time had not been changed. The magistrate explained he would send each page of the warrant by separate email and separately signed.

[¶6] The final call ended at 9:59 p.m. and the final warrant was issued. According to testimony at the suppression hearing, law enforcement thought the warrant authorized the search to occur until 11:00 p.m. However, the warrant that was printed and left at the searched residence did not include the exception for an after-hours search nor did it identify a basis for an after-hours search. No copy of the warrant authorizing the search to occur until 11:00 p.m. was presented at the suppression hearing. It is uncontested that law enforcement executed the warrant shortly after 10:00 p.m.

[¶7] When law enforcement arrived at the residence with the warrant, they observed Mr. Chace sitting in the living room watching television. Mr. Chace did not live at his brother's home but was staying there during a visit to Laramie. He responded to the officers' knock at the door and let law enforcement into the apartment. Officers found a backpack next to where Mr. Chace had been sitting. The backpack contained methamphetamine and related paraphernalia. Concluding the contents of the backpack belonged to Mr. Chace, officers arrested him.

[¶8] The State charged Mr. Chace with two counts of felony possession of methamphetamine. He initially pleaded not guilty. After the district court denied his motion to suppress, Mr. Chace entered a conditional plea allowing him to appeal the suppression order. The trial court sentenced Mr. Chace to three to five years of incarceration, suspended pending successful completion of two years of supervised probation. Mr. Chace timely appealed the denial of his motion to suppress.

### STANDARD OF REVIEW

[¶9] We defer to the district court's findings of fact unless they are clearly erroneous. *Ramirez v. State*, 2023 WY 70, ¶ 12, 532 P.3d 230, 233–34 (Wyo. 2023) (citations omitted). We view the evidence in the light most favorable to the district court's determination because that court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Id.* (citation omitted). On issues where the district court did not make specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. *Id.* (citation omitted). "The ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo." *Id.* (citations omitted).

*DISCUSSION*

[¶10]   Wyoming Rule of Criminal Procedure 41 provides that warrants must be executed between 6:00 a.m. and 10:00 p.m. unless the warrant expressly authorizes execution at a different time based on good cause:

> The warrant must command the peace officer to:
>
> (A) initiate execution of the warrant within a specified time not to exceed 10 days;
>
> (B) execute the warrant during the hours of 6:00 a.m. to 10:00 p.m., unless the judicial officer for good cause expressly authorizes, in the warrant, execution at another time.

Wyo. R. Crim. P. 41(e)(1).[1]   Rule 41(e)(1) restricts late night searches because homes are entitled to "special dignity and special sanctity," and because nighttime searches entail a greater invasion of privacy than daytime searches.  *State v. Deen*, 2015 WY 5, ¶ 14, 340 P.3d 1036, 1040–41 (Wyo. 2015) (citations omitted).   "A knock at the door is more alarming in the middle of the night, and it is no less so because the officer knocking has a search warrant."  *Roose v. State*, 759 P.2d 478, 486 (Wyo. 1988) (quoting *United States v. Smith*, 340 F. Supp. 1023, 1029 (D. Conn. 1972)); *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir. 1979) ("At common law, prior to the adoption of the Bill of Rights there was a strong aversion to nighttime searches. . . . Night-time search was the evil in its most obnoxious form." (quoting *Monroe v. Pape*, 365 U.S. 167, 210, 81 S. Ct. 473, 496, 5 L. Ed. 2d 492 (1960) (J. Frankfurter, concurring & dissenting))).

[¶11]   Citing to the federal and state constitutions, Mr. Chace argues the fruits of the search must be suppressed because the search occurred after 10:00 p.m. without the express authorization in the warrant required by Rule 41(e)(1).[2]   It is uncontested that Mr. Chace has standing, as an overnight guest in his brother's home, to assert a Fourth Amendment

---

[1] Wyo. Stat. Ann. § 35-7-1045(d) also imposes a probable cause requirement for nighttime warrants involving controlled substances. *Ehrenborg v. State*, 639 P.2d 886, 887 (Wyo. 1982); *see also United States v. Shelton*, 742 F. Supp. 1491, 1500–01 (D. Wyo. 1990) (discussing the distinctions between Wyo. Stat. Ann. § 35-7-1045(d) and its federal counterpart, 21 U.S.C. § 879(a), which requires no special showing for nighttime warrants related to controlled substances pursuant to *Gooding v. United States*, 416 U.S. 430, 94 S. Ct. 1780, 40 L. Ed. 2d 250 (1974)).

[2] Both the Wyoming Constitution and the United States Constitution provide that people have the right "against unreasonable searches and seizures." Wyo. Const. art. 1, § 4; U.S. Const. amend. IV.  Mr. Chace briefly cites article 1, section 4 of the Wyoming Constitution as a second basis to suppress the evidence obtained in the search; however, he provides no independent state constitutional analysis.  We consistently decline to consider state constitutional claims unsupported by analysis explaining why the state constitution should be independently analyzed and considered to extend broader rights than the federal constitution. *Ramirez*, 2023 WY 70, ¶¶ 14–17, 523 P.3d at 234–35.

violation. *E.g.*, *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). However, courts have long held that a Rule 41 violation does not equate to a Fourth Amendment violation. *Shelton*, 742 F. Supp. at 1502–03 (discussing *United States v. Schoenheit*, 856 F.2d 74, 77 (8th Cir. 1988)). The right to be free from unreasonable searches is a substantive, constitutional right, while Rule 41 specifies a procedure used to protect that right. *Id.* (discussing *United States v. Searp*, 586 F.2d 1117, 1122 (6th Cir. 1978)). The constitutional right is not necessarily violated when the proper procedure was not observed, and therefore the exclusionary rule does not always apply. *Id.*

[¶12] We apply a two-part test to determine whether an after-hours search in violation of Rule 41 supports application of the exclusionary rule:

> Violations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Deen*, 2015 WY 5, ¶ 12, 340 P.3d at 1040 (quoting *Murray v. State*, 855 P.2d 350, 355 (Wyo. 1993)); *see also Shelton*, 742 F. Supp. at 1502–03 (discussing the same two-part analysis applied in other state courts and in federal courts for violations of the identical federal rule).

[¶13] In *Deen*, a warrant that did not include an express authorization for a nighttime search was executed at 10:18 p.m. 2015 WY 5, ¶¶ 4, 9, 15, 340 P.3d at 1038, 1039, 1041. The occupants of the home were fully clothed, and lights were on at the time of the search. *Id.* at ¶ 15, 340 P.3d at 1041. The law enforcement officer did not realize he was executing the warrant after 10:00 p.m. but testified that had he known, he would either have called the magistrate back for an after-hours exception or posted some officers outside the house and come back to execute the warrant at 6:00 a.m. *Id.* at ¶¶ 16, 18. We noted that at 6:00 a.m. the occupants of the home would be more likely to be asleep, thus triggering the greater, more abrasive invasion of privacy than the search that occurred at 10:18 p.m. *Id.* at ¶¶ 15–17. We concluded there was no prejudice under the first part of the test. *Id.*

[¶14] Similarly, Mr. Chace was not prejudiced when law enforcement executed the warrant to search his brother's home a few minutes after 10:00 p.m. Officers observed Mr. Chace awake and watching television when they arrived. The search was not any different or more invasive than if it had occurred shortly before 10:00 p.m. Indeed, Appellant concedes the focus in this case centers on the second part of the test—whether the law enforcement officers executing the warrant intentionally or deliberately disregarded Rule 41's requirements.

[¶15] To this part, the officer who requested the warrant testified that he discussed the timing with the magistrate and thought the warrant was authorized until 11:00 p.m. The

recorded call that occurred at 9:57 p.m. was presented to the trial court and supports this testimony and the trial court's findings. The body camera recording of the requesting officer shows two other officers were present, outside a patrol vehicle, on the street, close to the residence to be searched. The requesting officer called the magistrate and identified the defect in the warrant that was emailed to the officers— "I was just looking over the emailed copy. It just looks like you didn't sign the second part of it, where you changed the time?" The magistrate said he would resend the warrant, with separately signed pages to remedy the error. The district court acknowledged this conversation with the magistrate and concluded the officers were aware they would be executing the warrant after 10:00 p.m. but believed they had authorization for the nighttime search.

[¶16]  We find no clear error by the district court in its findings regarding the officers' Rule 41 intent or disregard. The court's findings and conclusions about the officers' intent align with the evidence presented, and we acknowledge the court's opportunity to assess the officers' credibility and make the necessary deductions, inferences, and conclusions from that evidence. As such, we cannot agree with Mr. Chace that officers intentionally and deliberately executed the warrant outside the parameters imposed by Rule 41(e)(1).

## *CONCLUSION*

[¶17]  Mr. Chace was not prejudiced by the nighttime search, nor did law enforcement intentionally and deliberately disregard the limits in Rule 41(e)(1) for executing the warrant. We find no clear error by the district court in its factual findings, and we conclude the exclusionary rule does not apply in this case. We affirm the district court's decision.[3]

---

[3] The State presents an additional argument that the search was permissible under the good faith exception to warrantless searches. Having decided this matter by applying our two-part test for evaluating Rule 41 violations when a warrant has been obtained, we decline to consider the alternate argument.

5