# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 99

APRIL TERM, A.D. 2024

September 19, 2024

ROBERT JAMES LABBE,

Appellant
(Defendant),

v.

S-24-0038

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
*The Honorable Benjamin S. Kirven, Judge*

*Representing Appellant:*
Office of State Public Defender: Ryan R. Roden, Interim Wyoming State Public Defender*; Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*
Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*\* An Order Substituting Ryan Roden for Diane Lozano was entered on August 9, 2024.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Robert James Labbe appeals the district court's denial of his motion to suppress evidence.  We affirm the district court's decision.

## ISSUE

[¶2]    The issue in this case is: Did the district court err when it denied Mr. Labbe's motion to suppress?

## FACTS

[¶3]    On January 12, 2023, at approximately 6:30 a.m., Officer Kevin Valentine from the Buffalo Police Department was dispatched to the Kum & Go gas station to investigate a report of a suspicious vehicle.  The gas station manager reported the vehicle had been parked at one of the gas pumps for 30–45 minutes with its windows covered up.  When Officer Valentine arrived at the gas station, he observed a white Toyota Camry with Montana plates parked at one of the pumps.  As Officer Valentine exited his patrol vehicle, a man, later identified as Robert Labbe, exited the Camry and walked toward the gas station.  Officer Valentine called out to Mr. Labbe and asked him to come back to the Camry and speak to him.  Mr. Labbe complied.

[¶4]    Officer Valentine asked Mr. Labbe for his driver's license so he could identify him.  Mr. Labbe said he did not have his driver's license on his person.  Officer Valentine ran Mr. Labbe's name and date of birth through dispatch.  He was informed Mr. Labbe's license was suspended.  Officer Valentine learned the passenger of the vehicle, Elizabeth Davison, also had a suspended driver's license and an active warrant for her arrest.

[¶5]    A few minutes later, Officer Dustin Matthews arrived on the scene to assist Officer Valentine.  He remained with Mr. Labbe while Officer Valentine arrested Ms. Davison.  Shortly after they arrested Ms. Davison, Officers Valentine and Matthews requested a canine to conduct a free air sniff of the Camry.  Dispatch called the canine officer, Johnson County Sheriff's Deputy Quinn Maddox.  Before Deputy Maddox arrived, Mr. Labbe got in and out of the vehicle multiple times, and he had full access to his cell phone.  When Mr. Labbe asked to go into the gas station to use the restroom, one of the officers advised him to "sit tight."

[¶6]    Deputy Maddox and his drug detection dog, Lucy, arrived at the gas station approximately 18 minutes after Officer Valentine's first interaction with Mr. Labbe.  When the dog arrived, Officer Matthews asked Mr. Labbe to step away from the Camry.  He complied.  When Deputy Maddox walked Lucy around the Camry, she alerted to the presence of drugs at the passenger side door.  Officer Valentine and Deputy Maddox searched the vehicle and found marijuana, marijuana paraphernalia, and aluminum foil

1

with two suspected fentanyl pills that looked like they had been smoked. The officers arrested Mr. Labbe for possession of a controlled substance.

[¶7] Law enforcement towed the Camry to the Criminal Justice Center for a more thorough search. During the subsequent search of the vehicle, officers found 24.01 grams of methamphetamine, 1,342 fentanyl pills, 37.92 grams of marijuana in a zip lock bag, 9.94 grams of marijuana in a foil package, some pre-rolled marijuana joints, and a syringe containing liquid THC. The State charged Mr. Labbe with three felony counts of possession of a controlled substance and one misdemeanor count of possession of a controlled substance.

[¶8] Mr. Labbe filed a motion to suppress the evidence arguing the drugs were found as the result of an illegal detention. The district court denied the motion to suppress. The district court found the Camry could not leave the gas station because neither Mr. Labbe nor Ms. Davison could lawfully drive the vehicle away from the parking lot, and no one else arrived to drive the car away before Deputy Maddox arrived. Without addressing the issue of whether Mr. Labbe had been detained, the district court held the search of the vehicle was lawful because the vehicle was parked in a public parking lot and law enforcement did not need reasonable suspicion, probable cause, or consent to conduct a canine sniff of the vehicle.

[¶9] With the consent of the district court, Mr. Labbe entered conditional guilty pleas to two counts of felony possession of a controlled substance. The State moved to dismiss the other two counts, and Mr. Labbe reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced Mr. Labbe to concurrent terms of three-to-five years in prison, suspended in lieu of three years of supervised probation. This appeal timely followed.

## STANDARD OF REVIEW

[¶10] The standard of review we apply to a district court's denial of a motion to suppress is well established:

> We defer to the district court's findings of fact unless they are clearly erroneous. We view the evidence in the light most favorable to the district court's determination because that court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions. On issues where the district court did not make specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. The

ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo.

*Chace v. State*, 2024 WY 20, ¶ 9, 542 P.3d 1078, 1081 (Wyo. 2024) (internal citations and quotation marks omitted).

## **DISCUSSION**

[¶11]  In his motion to suppress, Mr. Labbe argued his case was akin to a traffic stop. Although he conceded the initial stop was justified, he asserted the evidence should be suppressed because Officer Valentine had no reasonable suspicion to extend the stop for the approximately 18 minutes it took to procure the canine sniff.  He argued his case was like *Mahaffy v. State*, 2021 WY 63, ¶¶ 17–22, 486 P.3d 170,175–76 (Wyo. 2021), and *Brown v. State*, 2019 WY 42, ¶¶ 19–44, 439 P.3d 726, 732–38 (Wyo. 2019), where the officers unlawfully prolonged the scope of a traffic stop beyond the original purpose to deploy a drug sniffing dog without reasonable suspicion of further illegal activity.  Mr. Labbe's argument on appeal is slightly different.  Mr. Labbe argues he was unlawfully seized when law enforcement instructed him to "sit tight," and law enforcement had no reasonable articulable suspicion of criminal activity justifying the seizure.  He cites to *Wilson v. State*, 874 P.2d 215 (Wyo. 1994), which involved a suspect making incriminating statements while being illegally detained during the investigation of a fire.  Mr. Labbe argues his case is similar to *Wilson*, and the evidence found in the vehicle should be excluded under the Fourth Amendment to the United States Constitution because it was obtained after he was "illegally detained."

[¶12]  Mr. Labbe's reliance on cases like *Mahaffy* and *Brown* is misplaced because this case does not involve the extension of a traffic stop.  Similarly, this case is different from *Wilson* because the evidence taken from the vehicle was not "obtained either during or as a direct result of an unlawful invasion." *Wilson*, 874 P.2d at 225 (quoting *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L. Ed. 2d 441 (1963)).

[¶13]  The facts of this case are similar to those in *Kern v. State*, 2020 WY 60, 463 P.3d 158 (Wyo. 2020).  In *Kern*, the defendant parked his vehicle in a public parking lot and was walking into a bar when he was contacted by law enforcement. *Id.* at ¶ 4, 463 P.3d at 159–60.  During this encounter, the officer learned Mr. Kern did not have insurance and decided to write him a citation. *Id.*, 463 P.3d at 160.  While Mr. Kern was speaking to the officer, two other officers conducted a canine sniff of Mr. Kern's vehicle. *Id.*  The dog alerted to the presence of controlled substances, and officers found methamphetamine during a subsequent search of the vehicle. *Id.*  Mr. Kern argued the evidence should have been suppressed because the search of his vehicle was the result of an illegal detention. *Id.* at ¶ 5, 463 P.3d at 160.  We found the issue of whether Mr. Kern had been detained was ultimately irrelevant because the canine search was lawful regardless of any alleged detention. *Id.* at ¶¶ 9–11, 463 P.3d at 161–62.  The canine sniff occurred in a public place,

3

and the drug dog's alert gave the officers probable cause to search the vehicle. *Id.* at ¶ 11, 463 P.3d at 162.

[¶14]  Here, as in *Kern*, Mr. Labbe's initial interaction with law enforcement, and any alleged subsequent detention, was not the result of a traffic stop.  Mr. Labbe parked his vehicle in front of the gas pump of a gas station that is open to the public, and it had been there for 30–45 minutes before law enforcement was called.  Mr. Labbe left his vehicle and was walking toward the gas station when he was first contacted by Officer Valentine.  He was not trying to return to his vehicle or leave in his vehicle when this encounter occurred. *See Kern*, 2020 WY 60, ¶ 9, 463 P.3d at 161.  Mr. Labbe consensually spoke with Officer Valentine, and during this encounter, Officer Valentine learned Mr. Labbe did not have a valid driver's license.  Accordingly, Mr. Labbe could not lawfully remove the Camry from the gas station parking lot.

[¶15]  "A 'canine sniff' by a well-trained narcotics detection dog, does not constitute a 'search' within the meaning of the Fourth Amendment." *Kern*, ¶ 10, 463 P.3d at 161 (citations omitted).  Because a "canine sniff" is not a search, law enforcement does not need probable cause, reasonable suspicion, or consent to run a trained drug dog around vehicles parked in public locations. *Id.* (citations omitted).  Deputy Maddox was free to conduct a free air sniff of the Camry, which was parked in a public location, even without reasonable suspicion or probable cause.  Whether Mr. Labbe was detained "is irrelevant under these circumstances because the free-air sniff was lawful whether [Mr. Labbe] was free to leave or not." *Id.* at ¶ 9, 463 P.3d at 161.  Even if Mr. Labbe had been allowed to walk away from the gas station, the Camry would have remained parked at the gas pump, where law enforcement could legally deploy a canine free-air sniff.

[¶16]  "Under the United States Constitution, when a trained and reliable drug dog alerts during an exterior sniff of a vehicle, there is probable cause to search that vehicle." *Kern*, ¶ 11, 463 P.3d at 162 (quoting *Pier v. State*, 2019 WY 3, ¶ 32, 432 P.3d 890, 899 (Wyo. 2019)); *see also United States v. Klinginsmith*, 25 F.3d 1507, 1510 (10th Cir. 1994) (holding a canine alert provided probable cause to perform a warrantless search of a vehicle).  Lucy, a trained narcotics detention dog, alerted to the presence of narcotics during the free-air sniff of the vehicle.  Upon Lucy's alert, law enforcement had probable cause to search the Camry for drugs.  The evidence recovered from the car was independent of any detention of Mr. Labbe, and it was not "obtained either during or as a direct result of an unlawful invasion." *Wilson*, 874 P.3d at 225 (quoting *Wong Sun*, 371 U.S. at 485, 83 S. Ct. at 416).  The district court correctly denied Mr. Labbe's motion to suppress.

## CONCLUSION

[¶17]  Mr. Labbe's vehicle was parked in a public location where law enforcement had the right to be when law enforcement conducted a canine free air sniff.  Mr. Labbe did not have a valid driver's license and was unable to lawfully remove the vehicle from the public

4

parking lot.  The drug dog alerted to the presence of narcotics, giving law enforcement probable cause to search the vehicle.  The district court correctly denied the motion to suppress because the free-air sniff of the vehicle was lawful, regardless of whether Mr. Labbe was detained.  Affirmed.