# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 93

APRIL TERM, A.D. 2025

August 15, 2025

ANDREW LEE BOYER,

Appellant
(Defendant),

v.

S-24-0296

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*
Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Elizabeth B. Lance and Toni E. Hartzel, Lance & Hall LLP, Cheyenne, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Samuel Williams, Senior Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and PHILLIPS, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**PHILLIPS, District Judge.**

[¶1]    Andrew Boyer entered a conditional guilty plea to felony possession of methamphetamine.  He reserved his right to appeal the denial of his motion to suppress the evidence obtained from a search of his vehicle following a traffic stop.  He challenges the reasonableness of the traffic stop under article 1, section 4 of the Wyoming Constitution and the Fourth Amendment of the United States Constitution.  We affirm.

## *ISSUE*

[¶2]    Did the district court err when it denied Mr. Boyer's motion to suppress?

## *FACTS*

[¶3]    On August 3, 2023, at approximately 12:40 p.m., Deputy Derek Lang observed a black sedan stopped at the intersection of Burma Avenue and Warlow Drive.  At this intersection, there are two lanes designated for travel facing the northbound direction.  The left lane is a turn-only lane for vehicles turning westbound on Warlow Drive.  The right lane of traffic allows drivers to proceed straight or turn east onto Warlow Drive.  Deputy Lang first observed the black sedan stopped behind a silver SUV in the right lane of travel, facing northbound.  There were three or four cars between Deputy Lang's patrol vehicle and the black sedan.  Deputy Kyle Borgialli was near the intersection to assist Deputy Lang with the execution of a warrant off Warlow Drive.  He was positioned in the line of cars stopped at the light and could see two vehicles in front of the black sedan.  Though Deputy Borgialli was only one vehicle behind the black sedan, a large SUV partially obstructed the view in front of him.  When the light turned green, the SUV stayed in place, and the black sedan overtook it on the right side to turn east onto Warlow Drive.  The black sedan did not leave the paved surface of the road during the overtaking.  Deputy Borgialli noticed that the black sedan was further ahead than expected when it turned onto Warlow Drive, based on the lineup of cars he saw at the intersection.  After being passed, the SUV also turned east onto Warlow Drive.  Deputy Lang could not see if the SUV used its turn signal before completing the right-hand turn.  He decided to follow the black sedan after observing the overtaking, as the presence of two vehicles turning right from that same location heightened his concern for safety.  Deputy Lang's front-facing dashcam was inoperable and did not capture the black sedan's maneuver.  It took Deputy Lang approximately one and one-half miles to catch up to the vehicle, traveling faster than the posted speed limit.  He provided dispatch with the vehicle's information once he caught up.  Dispatch informed Deputy Lang that the car was registered to Andrew Boyer and that Mr. Boyer did not have a valid driver's license.  By then, Deputy Borgialli had also caught up with the black sedan and positioned his vehicle parallel to visually confirm that Mr. Boyer was the driver.  However, he could only see a silhouette that resembled Mr. Boyer's physical characteristics.

1

[¶4]     Based on that information, Deputy Lang initiated a traffic stop and identified the sole occupant as Mr. Boyer.  Deputy Lang informed Mr. Boyer that he stopped him for not having a valid driver's license and for passing the SUV at the stoplight.  Mr. Boyer explained that his frustration with his girlfriend caused his driving behavior at the intersection.  He maintained that he had a valid driver's license.  Deputy Lang requested Mr. Boyer's license, registration, and proof of insurance.  Mr. Boyer produced his license but was not able to provide a copy of his registration or insurance.  Deputy Lang asked Mr. Boyer to accompany him to his patrol vehicle to verify the validity of his driver's license and to give Mr. Boyer the opportunity to find proof of his insurance on his phone.  Deputy Lang testified that an individual may possess a physical copy of their driver's license even though their driving privileges are revoked.  Deputy Lang also intended to issue Mr. Boyer a warning citation for overtaking on the right, a violation of Wyo. Stat. Ann. § 31-5-206. While Deputy Lang was completing the traffic stop, Deputy Trevor Osborn arrived on scene with his K-9, Torc.  Torc conducted a free-air sniff of Mr. Boyer's vehicle and alerted to the presence of controlled substances on the driver's side door.  The free-air sniff lasted approximately 37 seconds.  Deputy Lang had not completed the warning citation, and Mr. Boyer had not provided insurance information before the free-air sniff concluded.  Deputy Lang confirmed that Mr. Boyer had a valid driver's license several minutes after the free-air sniff ended.  Based on Torc's alert, Deputy Osborn and Deputy Lang performed a search of Mr. Boyer's vehicle.   They located used syringes, a baggie of suspected methamphetamine, a syringe loaded with suspected methamphetamine, glass tubes, and suspected marijuana.

[¶5]     Mr. Boyer was charged with taking a controlled substance into jail, a felony and violation of Wyo. Stat. Ann. § 6-5-208; possession of a controlled substance-methamphetamine (crystalline form), a felony and violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii); possession of a controlled substance-methamphetamine (liquid form), a misdemeanor and violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(B); and possession of a controlled substance-tetrahydrocannabinol (THC), a misdemeanor and violation of Wyo. Stat. Ann. § 35-7-1031(c)(i).

[¶6]     Mr. Boyer moved to suppress the evidence seized from his vehicle.  He argued that the deputies improperly expanded the scope of the traffic stop after stopping him based on incorrect information from dispatch.  Mr. Boyer further claimed that because there was no observed traffic violation, the reasonable suspicion for the stop ended once he presented his valid driver's license, prior to Torc conducting his free-air sniff.

[¶7]     After considering the evidence, the district court denied Mr. Boyer's motion to suppress.  It found that Deputy Lang had reasonable suspicion to stop Mr. Boyer's vehicle after observing his driving maneuver at the intersection of Burma and Warlow, and based on information from dispatch that Mr. Boyer was driving without a valid driver's license. The district court also found that the traffic stop was not unnecessarily extended.  For those

2

reasons, the district court found there was no violation of article 1, section 4 of the Wyoming Constitution or the Fourth Amendment to the United States Constitution.

[¶8]   Mr. Boyer entered a conditional guilty plea to one count of possession of methamphetamine, reserving his right to appeal the denial of his motion to suppress. The district court sentenced him to two to four years in prison. Mr. Boyer timely appealed.

## STANDARD OF REVIEW

[¶9]   The standard of review we apply to a district court's denial of a motion to suppress is well established:

> We defer to the district court's findings of fact unless they are clearly erroneous. We view the evidence in the light most favorable to the district court's determination because that court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions. On issues where the district court did not make specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. The ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo.

*Labbe v. State*, 2024 WY 99, ¶ 10, 556 P.3d 211, 213 (Wyo. 2024) (quoting *Chace v. State*, 2024 WY 20, ¶ 9, 542 P.3d 1078, 1081 (Wyo. 2024)).

## DISCUSSION

[¶10]  In his only issue on appeal, Mr. Boyer argues that Deputy Lang lacked reasonable suspicion to justify the initial traffic stop. Mr. Boyer challenges the denial of his motion to suppress under article 1, section 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution.

[¶11]  "When a party raises a state constitutional claim and provides proper argument on appeal and in the trial court below, the state constitutional analysis takes primacy—that is, the claim is first analyzed under the Wyoming Constitution." *Levenson v. State*, 2022 WY 51, ¶ 18, 508 P.3d 229, 235 (Wyo. 2022) (citing *O'Boyle v. State*, 2005 WY 83, ¶ 22, 117 P.3d 401, 408 (Wyo. 2005)). However, we have repeatedly explained, "to invoke an independent Wyoming constitutional analysis, 'the appellant must "use a precise and analytically sound approach and provide [the Court] with proper arguments and briefs to ensure the future growth of this important area of law."'" *Ramirez v. State*, 2023 WY 70, ¶ 15, 532 P.3d 230, 234 (Wyo. 2023) (quoting *Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d

802, 808 (Wyo. 2004)). While Mr. Boyer raised the Wyoming Constitution in his motion to suppress,[1] he failed to provide a precise, independent supporting analysis of how or why it provides different or more extensive protection in his argument on appeal. *See Flood v. State*, 2007 WY 167, ¶ 12, 169 P.3d 538, 543 (Wyo. 2007). "General citation to the Wyoming Constitution does not suffice to preserve a state constitutional argument for appeal, nor does citation to cases decided under the Wyoming Constitution without argument concerning how they apply to the case under consideration." *Gibson v. State*, 2019 WY 40, ¶ 13, 438 P.3d 1256, 1259 (Wyo. 2019) (internal citation omitted).

[¶12] Nevertheless, within the context of the facts of this case, we apply the same considerations in our Fourth Amendment analysis that would have been applied under a state constitutional analysis. To be sure, the standard governing our analysis under article 1, section 4 of the Wyoming Constitution is whether the traffic stop is "reasonable under all of the circumstances." *O'Boyle*, ¶¶ 30–31, 117 P.3d at 410 (citation omitted). Similarly, the standard applicable to the constitutionality of a traffic stop under the Fourth Amendment is "whether the scope of the stop was reasonable under the totality of the circumstances." *Id.* ¶ 49, 117 P.3d at 415. We have observed that "in assessing the reasonableness of a traffic stop and detention, there is not a significant difference between our federal and state analysis, given that under either analysis we are considering the reasonableness of the government intrusion in light of all the circumstances." *Klomliam v. State*, 2014 WY 1, ¶ 17, 315 P.3d 665, 669 n.1 (Wyo. 2014); *see also Pryce v. State*, 2020 WY 151, ¶ 26, 477 P.3d 90, 96 n.1 (Wyo. 2020) (noting a Wyoming Constitutional analysis applies soundly to a Fourth Amendment analysis). Because "'the two-pronged *Terry* inquiry [provides] an appropriate analytical framework for our reasonableness inquiry under Article 1, Section 4' of the Wyoming Constitution," we confine our review to Mr. Boyer's Fourth Amendment claim. *Levenson*, ¶ 24, 508 P.3d at 237 n.6 (quoting *Fertig v. State*, 2006 WY 148, ¶ 19, 146 P.3d 492, 498 (Wyo. 2006)).

[¶13] The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Kennison v. State*, 2018 WY 46, ¶ 13, 417 P.3d 146, 149–50 (Wyo. 2018) (quoting *Allgier v. State*, 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015)). The Court evaluates the reasonableness of a traffic stop by applying the two-prong test from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968):

---

[1] In the district court, Mr. Boyer tied his state constitutional argument to his claim that the traffic stop was unlawfully extended. On appeal, Mr. Boyer abandons his argument related to the scope of the stop, focusing solely on his claim that Deputy Lang did not have reasonable suspicion to pull him over. "It is well established that we will not ordinarily consider matters raised for the first time on appeal. It should be equally clear that we do not ordinarily consider matters that have not been briefed or argued before this Court." *Bueno-Hernandez v. State*, 724 P.2d 1132, 1140 (Wyo. 1986) (internal citation omitted) (citing *Jones v. State*, 568 P.2d 837 (Wyo. 1977)).

"(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance." *Ramirez*, ¶ 19, 532 P.3d at 235–36 (quoting *Levenson*, ¶ 31, 508 P.3d at 240). To justify an initial traffic stop, a law enforcement officer must have reasonable suspicion—a particularized and objective basis to suspect the motorist is violating the law. *Elmore v. State*, 2021 WY 41, ¶ 10, 482 P.3d 358, 361 (Wyo. 2021). "Reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based upon the 'totality of the circumstances.'" *Allgier*, ¶ 14, 358 P.3d at 1276 (quoting *Venegas v. State*, 2012 WY 136, ¶ 9, 287 P.3d 746, 749 (Wyo. 2012)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* (citations omitted). If an officer makes a mistake of fact, it must be objectively reasonable. *Harris v. State*, 2018 WY 14, ¶ 18, 409 P.3d 1251, 1254–55 (Wyo. 2018) (holding that an officer's belief that a facially valid insurance card did not establish proof of current insurance was reasonable).

[¶14]  On appeal, Mr. Boyer contends that the traffic stop initiated by Deputy Lang was not justified at its inception because his act of overtaking the SUV did not constitute a violation of Wyo. Stat. Ann. § 31-5-206. He overlooks the district court's finding that, apart from the overtaking, Deputy Lang had an independent basis to initiate the traffic stop based on dispatch information about Mr. Boyer's driver's license.

[¶15]  Deputy Lang first observed Mr. Boyer's black sedan stopped at the intersection of Burma Avenue and Warlow Drive, positioned behind an SUV in the right lane of travel, facing northbound. In that lane, Mr. Boyer could have proceeded straight through the light or turned right onto Warlow Drive. As the light turned green, the SUV did not proceed straight. Rather than waiting to determine the SUV's intentions, Mr. Boyer overtook it and made the right-hand turn first. Deputy Lang did not see whether the SUV had its turn signal on, but he saw it turn right onto Warlow Drive after being passed by Mr. Boyer. Because both vehicles turned right from that single lane of traffic, Deputy Lang believed Mr. Boyer's improper driving maneuver posed a safety concern and violated Wyo. Stat. Ann. § 31-5-206.

[¶16]  Section 31-5-206 of the Wyoming Statutes provides,

> (a)    The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:
>
> (i)    When the vehicle overtaken is making or about to make a left turn;
>
> (ii)    Upon a roadway with unobstructed pavement of sufficient width for two (2) or more lines of vehicles

moving lawfully in the direction being traveled by the overtaking vehicle.

(b) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting the movement in safety. The movement shall not be made by driving off the roadway.

Wyo. Stat. Ann. § 31-5-206 (LexisNexis 2025).

[¶17] Based on this observation, Deputy Lang decided to follow Mr. Boyer east onto Warlow Drive. While trailing Mr. Boyer, Deputy Lang received information from dispatch that Mr. Boyer did not have a valid driver's license. It was then that Deputy Lang initiated a traffic stop due to a suspected violation of Wyo. Stat. Ann. § 31-7-106(a).

[¶18] Wyo. Stat. Ann. § 31-7-106(a) mandates,

No person, unless exempt under this act shall drive, steer or exercise any degree of physical control of any motor vehicle or a vehicle being towed by a motor vehicle upon a highway in this state unless the person has been issued a driver's license for the class and type and applicable endorsements valid for the motor vehicle being driven.

Wyo. Stat. Ann. § 31-7-106(a) (LexisNexis 2025).

[¶19] Deputy Lang informed Mr. Boyer that he was pulled over for not having a valid driver's license and for overtaking the SUV at the stoplight. Mr. Boyer did not dispute the improper driving maneuver and attributed it to frustration with his girlfriend. Even though Mr. Boyer stated he had a valid driver's license, Deputy Lang testified that an individual may possess a physical copy of their driver's license even though their driving privileges are revoked. While Mr. Boyer searched for proof of insurance, K9 Torc alerted to the presence of controlled substances within Mr. Boyer's vehicle, eventually leading to the discovery of methamphetamine, marijuana, and other drug paraphernalia. Deputy Lang confirmed that Mr. Boyer had a valid driver's license several minutes after Torc's alert.

[¶20] Relying on *Levenson*, Mr. Boyer argues that Deputy Lang was unjustified in following him for more than one mile and exceeding the speed limit to catch up. He also argues that there was no reason for the deputy to request his driver's license information from dispatch. In *Levenson*, a trooper decided to follow a vehicle on the interstate without first observing a traffic violation. *Levenson*, ¶ 28, 508 P.3d at 239. To catch the vehicle, the trooper reached a speed of 111 miles per hour. *Id.* ¶ 4, 508 P.3d at 232. During the pursuit, the trooper positioned his patrol vehicle in such a way that the target vehicle was

forced to follow too closely behind a semi-truck that was slowing to exit the interstate. *Id.* ¶ 5, 508 P.3d at 232. After calculating the distance between the target vehicle and the semi-truck, the trooper initiated a traffic stop for following too closely. *Id.* ¶ 6, 508 P.3d at 232. Based on the totality of the circumstances, we held that the trooper's actions were unreasonable because his conduct negated the objective justification necessary for the initial traffic stop. *Id.* ¶ 29, 508 P.3d at 239.

[¶21] The facts of this case are distinguishable from those in *Levenson*. Here, Deputy Lang's decision to pursue Mr. Boyer was reasonable because he first observed a traffic violation at the intersection of Burma Avenue and Warlow Drive. *Levenson*, ¶ 28, 508 P.3d at 239. Further, Deputy Lang's elevated speed to catch Mr. Boyer did not contribute to the two bases that ultimately justified the stop. *Compare Levenson*, ¶ 29, 508 P.3d at 239, *with Ramirez*, ¶ 25, 532 P.3d at 237 (holding that a trooper exceeding 120 miles per hour was constitutional when the action did not provoke a traffic violation). It was the overtaking violation that served as the catalyst for requesting Mr. Boyer's information from dispatch.

[¶22] We defer to the district court's findings of fact unless they are clearly erroneous. After considering the evidence, the district court identified two bases that justified the initial stop of Mr. Boyer's vehicle. First, the district court made a factual finding that Deputy Lang had reasonable suspicion to believe that Mr. Boyer had committed a traffic violation when he overtook the SUV at the intersection of Burma Avenue and Warlow Drive. An initial traffic stop is justified under the Fourth Amendment when an officer observes a violation of Wyoming law. *See Gibson*, ¶ 9, 438 P.3d at 1258 (citing *Clay v. State*, 2016 WY 55, ¶ 18, 372 P.3d 195, 198 (Wyo. 2016)). Even though the dashcam did not capture the overtaking, the district court credited Deputy Lang's observations about the maneuver and that it created a safety concern for traffic at that location. We defer to the district court's assessment of witness credibility. *Ward v. State*, 2015 WY 10, ¶ 13, 341 P.3d 408, 410 (Wyo. 2015). Second, the district court found that Deputy Lang had an independent basis to initiate the traffic stop once he learned that Mr. Boyer did not have a valid driver's license, a violation of Wyo. Stat. Ann. § 31-7-106(a). Again, an observed violation of Wyoming law provides a valid reason to initiate a traffic stop. *Gibson*, ¶ 9, 438 P.3d at 1258. The fact that Mr. Boyer's license proved to be valid after the stop is inconsequential to our analysis, as information received from dispatch is generally reliable for purposes of establishing reasonable suspicion or as a tool to investigate suspected traffic violations. *See Phelps v. State*, 2012 WY 87, ¶ 31, 278 P.3d 1148, 1156–57 (Wyo. 2012), *overruled on other grounds by Allgier*, ¶ 14, 358 P.3d at 1276 (discussing an officer using information from dispatch to support an initial stop); *Gibson*, ¶ 10, 438 P.3d at 1259 (noting that checking information through dispatch is acceptable conduct to continue a stop); *Clay*, ¶ 18, 372 P.3d at 198 (finding the initial stop of a vehicle justified under the Fourth Amendment because the defendant "was in violation of Wyoming law requiring license plates or a valid registration to be displayed and plainly visible on a vehicle") (citing Wyo. Stat. Ann. § 31-2-205(a)(i)). Indeed, "we judge the reasonableness of an officer's suspicion

based on information that was available to him at the time of the stop, not with reference to later-obtained information." *Elmore*, ¶ 20, 482 P.3d at 363–64 (citing *Jennings v. State*, 2016 WY 69, ¶ 10, 375 P.3d 788, 791 (Wyo. 2016)).

[¶23]   In *Kansas v. Glover*, 589 U.S. 376, 378, 140 S.Ct. 1183, 1186, 206 L.Ed.2d 412 (2020), the United States Supreme Court addressed this very issue when it considered whether a police officer violated the Fourth Amendment by initiating a traffic stop after running a vehicle's license plate and discovering that the registered owner had a revoked driver's license.  It held that when an officer lacks information negating an inference that the owner is the driver of the vehicle, then the traffic stop is reasonable.

> As an initial matter, we have previously stated that officers, like jurors, may rely on probabilities in the reasonable suspicion context.  Moreover, as explained above, Deputy Mehrer did not rely exclusively on probabilities.  He knew that the license plate was linked to a truck matching the observed vehicle and that the registered owner of the vehicle had a revoked license.  Based on these minimal facts, he used common sense to form a reasonable suspicion that a specific individual was potentially engaged in specific criminal activity—driving with a revoked license.  Traffic stops of this nature do not delegate to officers "broad and unlimited discretion" to stop drivers at random.  Nor do they allow officers to stop drivers whose conduct is no different from any other driver's.  Accordingly, combining database information and commonsense judgments in this context is fully consonant with this Court's Fourth Amendment precedents.

*Id.* at 385, 104 S.Ct. at 1190 (internal citations omitted).  Like *Glover*, Deputy Lang relied on database information and a commonsense judgment to initiate the traffic stop on Mr. Boyer's vehicle.  The traffic stop satisfied the first prong of the *Terry* analysis.

[¶24]   Accordingly, the record supports the district court's conclusion that Deputy Lang had a particularized and objective basis for suspecting that Mr. Boyer was engaged in a violation of Wyoming law.  The traffic stop was justified by reasonable suspicion, the standard required by the Fourth Amendment for such an investigatory detention.

## *CONCLUSION*

[¶25]   The district court properly denied Mr. Boyer's motion to suppress after finding that Deputy Lang had reasonable suspicion to initiate the traffic stop.  Therefore, the initial stop did not violate the Fourth Amendment to the United States Constitution.  Affirmed.